[Nos. B186442, B188355. Second Dist., Div. Eight. July 25, 2006.]

In re GLADYS L., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
ALEX C., Defendant and Appellant.

COUNSEL

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Pamela S. Landeros, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**COOPER, P. J.**—We reverse the juvenile court's order terminating Alex C.'s parental rights over his daughter Gladys L. Before a juvenile court may terminate a presumed father's parental rights over his child, the juvenile court must find by clear and convincing evidence that the presumed father is unfit. Here, it was neither alleged nor proven that Alex was an unfit parent.

## FACTUAL AND PROCEDURAL BACKGROUND

Gladys and her two siblings became dependants of the juvenile court while they were in the custody of their mother, who is not a party to this appeal. Gladys's father, Alex C., appeared at the detention hearing in August 2002 and submitted to the court's jurisdiction. He was represented by counsel. The juvenile court found him to be Gladys's presumed father. Alex was a nonoffending parent, but at the detention hearing the Los Angeles County Department of Children and Family Services (DCFS) warned that it might amend the Welfare and Institutions Code[1] section 300 petition to name him. The court refused to make "anticipatory orders," without any petition alleging that Alex either abused or neglected Gladys.

Alex then disappeared. In his three-year absence, Alex did not request custody and did not visit Gladys. Alex reappeared in August 2005 at the section 366.26 hearing. At that time, he requested visits with Gladys. The court denied the request.[2] The court found that it was not in Gladys's best interest to have any contact with Alex. In December 2005, at the continuation of the section 366.26 hearing, the court terminated Alex's parental rights. The court denied Alex's renewed request to reestablish his relationship with Gladys. Alex appeals from the termination of his parental rights.

---

[1] Undesignated statutory citations are to this code.

[2] Alex appeals from this order, which we consolidated with his appeal from the termination of parental rights. However, he makes no argument with respect to the court's denial of visitation rights.

DCFS never filed a petition alleging that Alex violated any provision of the Welfare and Institutions Code, and he was never adjudicated to be an unfit parent.[3]

## DISCUSSION

■ Parents have a fundamental interest in the care, companionship, and custody of their children. (*Santosky v. Kramer* (1982) 455 U.S. 745, 758 [71 L.Ed.2d 599, 102 S.Ct. 1388] (*Santosky*).) *Santosky* establishes minimal due process requirements in the context of state dependency proceedings. "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." (*Id.* at pp. 747–748.) "After the State has established parental unfitness at that initial proceeding, the court may assume at the *dispositional* stage that the interests of the child and the natural parents do diverge." (*Id.* at p. 760.) "But until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship." (*Ibid.*)

California's dependency system comports with *Santosky*'s requirements because, by the time parental rights are terminated at a section 366.26 hearing, the juvenile court *must* have made prior findings that the parent was unfit. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) "The number and quality of the judicial findings that are necessary preconditions to termination convey very powerfully to the fact finder the subjective certainty about parental unfitness and detriment required before the court may even consider ending the relationship between natural parent and child." (*Id.* at p. 256.) The linchpin to the constitutionality of the section 366.26 hearing is that prior determinations ensure "the evidence of detriment is already so clear and convincing that more cannot be required without prejudice to the interests of the adoptable child, with which the state must align itself." ( 5 Cal.4th at p. 256.)

■ Here, the requirements of *Santosky* and the safeguards embedded in the California dependency scheme were ignored. DCFS never alleged that Alex was unfit and the trial court never made that finding. Due process therefore prohibits the termination of Alex's parental rights. Implying a finding of detriment, as requested by DCFS, asks this court to act as petitioner and fact finder, thereby denying Alex an opportunity for notice of specific charges and an opportunity to respond to the charges against him. (Cf. *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1824 [46 Cal.Rptr.2d 198]

---

[3] DCFS states that the court found the return of Gladys to Alex's custody would cause her detriment but the record does not support that statement.

[refusing to make an implied finding of detriment under section 361.2].) Notably, DCFS's request for implicit findings is devoid of specific charges.

Contrary to DCFS's argument, Alex did not forfeit his right to contest the termination of his parental rights by failing to act sooner. (*In re Gerardo A.* (2004) 119 Cal.App.4th 988, 993 [14 Cal.Rptr.3d 798] [waiver rule not enforced where it conflicts with due process].) Although the reversal of the juvenile court's order undermines the important goal of rapidly concluding dependency proceedings, it is the only way to safeguard Alex's rights as Gladys's presumed father and ensure that he is afforded due process.

## DISPOSITION

The order terminating Alex C.'s parental rights is reversed. The case is remanded to the juvenile court to determine whether, based upon the facts as they currently exist, a petition under section 300 can be properly pleaded and proven.

Boland, J., and Flier, J., concurred.